UNITED STATES of America,
Plaintiff–Appellee,

v.

Scott Douglas LACY, Defendant–
Appellant.

No. 95–30370.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1996.

Submission Vacated Aug. 5, 1996.

Resubmitted June 27, 1997.

Decided July 10, 1997.

C. James Frush, Helsell Fetterman, Seattle, WA, for defendant-appellant.

Kathy L. McClure and Patricia Toth, United States Department of Justice, Washington, DC, for plaintiff-appellee.

Before: BROWNING, WRIGHT and T.G. NELSON, Circuit Judges.

JAMES R. BROWNING, Circuit Judge.

Scott Douglas Lacy appeals his conviction for possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). We affirm.

## I.

The United States Customs Service was informed that child pornography from a Danish computer bulletin board system called BAMSE was being brought into the United States by computer. BAMSE's records indicated several people, including a caller from Seattle who identified himself as "Jim Bakker," had received material from BAMSE by telephone.[1] "Bakker" had called BAMSE sixteen times and had downloaded six picture files containing computerized visual depictions known as GIFs.[2] Customs agents traced the caller's phone number to an apartment occupied by a computer analyst named Scott Lacy. Telephone records reflected calls made from Lacy's telephone to BAMSE on the dates shown in BAMSE's records.

A warrant was issued authorizing the search of Lacy's apartment and seizure of computer equipment and records, and documents relating to BAMSE. Customs agents seized Lacy's computer, more than 100 computer disks, and various documents.[3] The computer hard drive and disks contained GIF files depicting minors engaged in sexually explicit activity.

Lacy was indicted for possessing child pornography.[4] Lacy's motion to suppress was denied, with inconsequential exceptions.[5] Lacy was tried and convicted. He appealed, challenging the suppression ruling, the jury instructions, and the sufficiency of the evidence on the crime's jurisdictional element.

## II.

Lacy argues the affidavit supporting the application for the warrant was insufficient to establish probable cause because it rested on stale information and demonstrated only that he "might have attempted to order" obscene pictures.

Evidence the defendant has ordered child pornography is insufficient to establish probable cause to believe the defendant possesses such pornography. *See United States v. Weber,* 923 F.2d 1338, 1344 (9th Cir.1990). However, the affidavit stated Lacy downloaded at least two GIF's depicting minors engaged in sexual activity from BAMSE, providing sufficient evidence Lacy actually received computerized visual depictions of child pornography.

The information in the affidavit was not stale. An affidavit must be based on facts " 'so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.' " *Durham v. United States,* 403 F.2d 190, 193 (9th Cir. 1968) (quoting *Sgro v. United States,* 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932)). We held in *Durham* that probable cause was not established by an affidavit relying on events that occurred four months earlier. *Id.* at 194–95. The information relied on in this case was ten months old. However, "[t]he mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Dozier,* 844 F.2d 701, 707 (9th Cir.1988). "We evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Pitts,* 6 F.3d 1366, 1369 (9th Cir.1993) (internal quotation omitted). The information offered in support of the application for a

---

1. The BAMSE computer recorded the dates and times of calls, the caller's phone number, and the names of files the user downloaded.

2. GIF stands for "graphic interchange format," a special format used to store visual information such as photographs.

3. Some of the disks were seized from Lacy's apartment, while others were found in a separate storage room that was searched with Lacy's consent.

4. The indictment also charged Lacy with receiving child pornography and importing obscene material into the United States. The importation count was dismissed before trial on the government's motion. The district court acquitted Lacy of receiving child pornography.

5. The district court suppressed several documents, but both parties describe them as inconsequential.

search warrant is not stale if "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." *United States v. Gann*, 732 F.2d 714, 722 (9th Cir.1984).

The affidavit in this case provided ample reason to believe the items sought were still in Lacy's apartment. Based on her training and experience as a Customs agent, the affiant explained that collectors and distributors of child pornography value their sexually explicit materials highly, "rarely if ever" dispose of such material, and store it "for long periods" in a secure place, typically in their homes.[6] *Cf. United States v. Rabe*, 848 F.2d 994, 995–96 (9th Cir.1988). We are unwilling to assume that collectors of child pornography keep their materials indefinitely, but the nature of the crime, as set forth in this affidavit, provided "good reason[ ]" to believe the computerized visual depictions downloaded by Lacy would be present in his apartment when the search was conducted ten months later. *See Gann*, 732 F.2d at 722; *cf. Dozier*, 844 F.2d at 707 (long-term nature of marijuana cultivation justified magistrate's reliance on information that was five months old).

■■ Lacy also argues the warrant was too general because it authorized the seizure of his entire computer system.[7] Lacy relies primarily upon *United States v. Kow*, 58 F.3d 423 (9th Cir.1995), in which we invalidated a

warrant authorizing seizure of all the defendant's computer hardware and software, as well as "essentially all" of its "records ... files, ledgers, and invoices." *See id.* at 425. Unlike the affidavit in *Kow*, the affidavit in this case established probable cause to believe Lacy's entire computer system was "likely to evidence criminal activity." *See id.* at 427. And while the warrant in *Kow* "contained no limits on which documents within each category could be seized or suggested how they related to specific criminal activity," *id.*, the Lacy warrant contained objective limits to help officers determine which items they could seize—allowing seizure only of documents linked to BAMSE, for example.

Both warrants described the computer equipment itself in generic terms and subjected it to blanket seizure. However, this type of generic classification is acceptable "when a more precise description is not possible," *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir.1982) (internal quotation omitted); *see also United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir.1995), and in this case no more specific description of the computer equipment sought was possible. The government knew Lacy had downloaded computerized visual depictions of child pornography, but did not know whether the images were stored on the hard drive or on one or more of his many computer disks. In the affidavit supporting the search warrant application, a Customs agent explained there was

---

**6.** Lacy challenges this information as "foundationless," citing *Weber*, in which we rejected information regarding the practices of child molesters because "there was not a whit of evidence in the affidavit indicating that Weber was a 'child molester.'" *Weber*, 923 F.2d at 1345. The affidavit in this case contained sufficient evidence that Lacy had downloaded computerized visual depictions of child pornography to provide a foundation for evidence regarding the practices of possessors of such pornography.

**7.** A warrant must describe the specific place to be searched and person or things to be seized "with particularity sufficient to prevent 'a general, exploratory rummaging in a person's belongings.'" *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir.1996) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038–39, 29 L.Ed.2d 564 (1971)); *see also Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). The warrant

need only be "reasonably specific, rather than elaborately detailed, and the required specificity varies depending on the circumstances of the case and the type of items involved." *Rude*, 88 F.3d at 1551 (citations and internal quotations omitted); *see United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986).

In gauging a warrant's specificity, we consider three factors:

(1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Noushfar*, 78 F.3d 1442, 1447 (9th Cir.1996) (quoting *Spilotro*, 800 F.2d at 963); *see United States v. Stubbs*, 873 F.2d 210, 211 (9th Cir.1989).

no way to specify what hardware and software had to be seized to retrieve the images accurately.

We conclude that Lacy's challenge to the district court's suppression ruling is without merit.

### III.

Lacy contends the district court improperly instructed the jury on the *mens rea* and jurisdictional elements of § 2252(a)(4)(B).

### A. Mens Rea

Lacy argues the instructions were improper because they omitted a necessary *mens rea* element. The instructions required the jury to find that Lacy knowingly possessed "the matters charged" and that those "matters contained a visual depiction of a minor engaging in sexually explicit conduct," but the instructions did not require a finding Lacy *knew* the matters contained the visual depictions. The omission was critical, Lacy contends, because his defense was that he had attempted to erase the illegal images from his computer disks and believed he had succeeded. He argues the instruction allowed the jury to convict him without finding he knew the computer hard drive and disks in his possession contained pornographic visual depictions that violated § 2252(a)(4)(B).

The government responds that the instruction was correct as given—an argument that can be interpreted as denying that knowledge of the presence of the pornographic depictions is required, or denying that the instructions omitted this element. We consider both possibilities.

#### 1.

The statutory language is of little help.[8] It is not clear whether the word "knowingly" was intended to modify only the first or all of the words in the series that follows. *See United States v. Gendron,* 18

F.3d 955, 958 (1st Cir.1994). However, a scienter requirement is presumed to apply "to each of the statutory elements which criminalize otherwise innocent conduct," even if this is not the "most natural grammatical reading" of the statutory language. *United States v. X–Citement Video, Inc.,* 513 U.S. 64, 72, 115 S.Ct. 464, 469, 130 L.Ed.2d 372 (1994). Applying this rule to a subsection of § 2252 that bars transportation of child pornography, the Supreme Court held in *X–Citement Video* that the knowledge requirement extended to the sexually explicit nature of the material and the age of the performer even though those elements were "set forth in independent clauses separated by interruptive punctuation." *Id.* at 68, 82, 115 S.Ct. at 467, 474. This interpretation was necessary, the Court held, because the elements at issue were crucial to establishing liability. Distribution of sexually explicit material involving adults is legal, while distribution of sexually explicit material involving minors is not. Unless a distributor knew the performers were underage, the Court reasoned, he would have reasonably expected his conduct to be legal. *Id.* at 71–73, 115 S.Ct. at 469.

The same is true of § 2252(a)(4)(B)'s requirement that a matter "contain" an unlawful visual depiction. Possession of computer drives and disks, like possession of books, is ordinarily lawful. The presence of illegal images on the disks or in the books is a "crucial element separating legal innocence from wrongful conduct." *See id.* Accordingly, a defendant may be convicted under § 2252(a)(4)(B) only upon a showing that he knew the matter in question contained an unlawful visual depiction.

#### 2.

Whether the knowledge element was omitted from the instructions depends upon the

---

8. The statute makes it a crime to
   knowingly possess[ ] 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which

have been mailed or so shipped or transported, by any means including by computer, if-
(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(ii) such visual depiction is of such conduct.
18 U.S.C. § 2252(a)(4)(B).

meaning of the word "matters."[9] Lacy contends the "matter" or "matters" referred to in the statute and instructions are the computer disks and hard drive that contain the GIF files, while the government argues "the 'matter' in question is the computer GIF files which contain the visual depictions of child pornography."

■■■■ The statute indicates that at a minimum, a "matter" must be capable of containing a visual depiction. *See* 18 U.S.C. § 2252(a)(4)(B). Although both the disks and the GIF files could be viewed as "containing" the visual depiction, we conclude the "matter" is the physical medium that contains the visual depiction—in this case, the hard drive of Lacy's computer and the disks found in his apartment. This interpretation is supported by two principles of statutory interpretation, *noscitur a sociis* and *ejusdem generis.* "The first means that a word is understood by the associated words, the second, that a general term following more specific terms means that the things embraced in the general term are of the same kind as those denoted by the specific terms." *United States v. Baird,* 85 F.3d 450, 453 (9th Cir.1996) (citing 2A Norman J. Singer, *Sutherland–Statutory Construction* §§ 47.16, 47.17 (5th ed.1992)). Although canons of construction do not mandate how a phrase is to be read, they "describe[ ] what we usually mean by a particular manner of expression." *Longview Fibre Co. v. Rasmussen,* 980 F.2d 1307, 1313 (9th Cir.1992). Here, the word "matter" appears at the end of the list "books, magazines, periodicals, films, [and] video tapes," all of which are physical media capable of containing images. *See Baird,* 85 F.3d at 453 (looking to list's "theme" to determine the meaning of a general term).

■■■■ The trial court did not explicitly instruct the jury to find whether Lacy knew depictions of minors engaged in sexually explicit conduct were on his hard drive and disks. It might be argued that instructing the jury to find whether Lacy knew images on his disks and hard drive depicted minors engaging in sexually explicit conduct necessarily required it to find that Lacy knew these depictions were, in fact, on his disks or hard drive. However, Lacy claimed he had seen the depictions of minors engaging in sexually explicit conduct when he opened the GIF files but had deleted the depictions from his disks and drive. If his claim were true, he knew the depictions he downloaded onto his disks and drive were of minors engaged in sexually explicit conduct, but he did not know the depictions were still on his disks and drive. To address this defense, the trial court had to instruct the jury that to convict Lacy it must find that he knew the depictions were on his disks and drive. Because the instructions allowed the jury to convict Lacy without finding that he knew the hard drive and disks contained the unlawful visual depictions, they were erroneous.

## B. Jurisdiction

■■■■ Lacy also challenges the district court's jurisdictional instruction, which required the jury to find "that each of those matters possessed by the defendant had been produced using materials that had been transported in interstate or foreign commerce." ER 9, Instruction 12. He argues the instruction erroneously focused on the materials used to produce the "matters"— that is, on whether the materials used to produce the *computer hard drive and disks* had traveled in interstate commerce—instead

9. The district court instructed the jury it could find Lacy guilty of possession if the government proved the following elements beyond a reasonable doubt:

First, that on or about March 6, 1993, the defendant knowingly possessed the matters charged;

Second, that each of those matters contained a visual depiction of a minor engaging in sexually explicit conduct;

Third, that each of those visual depictions was produced with the use of a minor engaging in sexually explicit conduct;

Fourth, that the defendant knew that each of those visual depictions was of a minor engaging in sexually explicit conduct, and knew it had been produced with the use of a minor engaging in such conduct; and

Fifth, that each of those matters possessed by defendant had been produced using materials that had been transported in interstate or foreign commerce.

ER 9, Instruction 12.

of focusing on the materials used to produce the *visual depictions*—that is, as we hold below, on whether the computer hard drive and disks *themselves* had traveled in interstate commerce.

Lacy's argument is supported by the plain language of § 2252(a)(4)(B), which prohibits possession of

> books ... or other matter which contain any *visual depiction* that has been mailed, or has been shipped or transported in interstate or foreign commerce, or *which was produced using materials which have been mailed or so shipped or transported,* by any means including by computer ...

18 U.S.C. § 2252(a)(4)(B) (emphasis added); *see Kimbrough,* 69 F.3d at 729 (jurisdictional element considers "whether the pictures or the materials used to produce them traveled in commerce"); *United States v. Colavito,* 19 F.3d 69, 71 (2d Cir.1994). The government argues it could establish jurisdiction by showing that "books ... or other matter which contain any visual depiction ... [were] produced" using materials transported in interstate commerce. The altered verb tense is significant; the government's interpretation would require an ungrammatical reading of the statute. We agree with the Fifth and Second Circuits that jurisdiction exists if the "pictures or the materials used to produce them" traveled in interstate commerce. *Kimbrough,* 69 F.3d at 729; *see Colavito,* 19 F.3d at 71. Because the instruction allowed the jury to convict Lacy without making such a finding, it was erroneous.[10]

### C. Plain error

■ Because Lacy did not object to these instructions, we review for plain error. Even if we found that Lacy established plain error, however, we would not exercise our discretion to correct the error because it did not "'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (quoting *United States v. Atkinson,* 297 U.S.

157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)); *see also United States v. Perez,* 116 F.3d 840, 845–46 (9th Cir.1997) (en banc).

We examine the strength of the evidence against Lacy to determine whether the errors in the jury instructions seriously affected the fairness and integrity of his trial. *Perez,* 116 F.3d at 847–48. The evidence that Lacy knew he possessed GIF files containing pornographic images was overwhelming. Lacy's phone records reflected calls to BAMSE. BAMSE's computer reflected those calls and indicated which pornographic images were downloaded. Agents who searched Lacy's apartment found computer disks containing child pornography, many labeled with the names of the GIF files they contained. A Customs agent testified that Lacy acknowledged downloading sexually explicit images of children and admitted he knew the children pictured were as young as eight or nine years of age. Lacy did not testify.

The only evidence in support of Lacy's claim that he thought he had deleted the GIF files came from Special Agent John Hynes, who testified as follows:

Q: Did you ask ... what he did with the material after it was downloaded?

A: Yes, ma'am. He said he deleted it.

. . .

Q: Would you review your notes regarding the deletion comment ... ?

A: Yes, ma'am. Immediately before that when I asked him if he had any child pornography and he responded he had downloaded some stuff, I asked him what he meant and he said child pornography and stuff, he then said he was extremely nervous about keeping it and as far as he knows or knew, the material was gone. . . .

He explained that he had called into the BAMSE bulletin board and heard on a voice mail message that they were shut down, and this had made him extremely nervous, that's why he deleted the material.

---

**10.** Arguing that the "matters" in question are the GIF files, the government also contends the instruction *did* require the jurors to consider whether the visual depictions were produced us-

ing materials that traveled in interstate commerce. We have already rejected the government's contention that the "matters" in question are the GIF files.

Lacy's statements were contradicted by the presence of the images on the disks. It is implausible, to say the least, that the jury believed Lacy, a professional computer analyst, attempted to delete the files but somehow failed to do so.

It is also extremely unlikely that the jury, if properly instructed, would not have found that the government established the jurisdictional element of the crime. As we hold below, Lacy "produced" the visual depictions using his computer. The government offered evidence that Lacy's computer equipment traveled in interstate commerce; Lacy did not dispute the evidence or provide any evidence to the contrary.

## IV.

Lacy argues the government failed to prove the jurisdictional element of the crime. To establish jurisdiction under § 2252, the government was required to prove either that the visual depictions were transported in interstate commerce or that they were "produced using materials which have been mailed or so shipped or transported, by any means including by computer ..." 18 U.S.C. § 2252(a)(4)(B); *see Kimbrough*, 69 F.3d at 729 (describing jurisdictional element as "whether the pictures or the materials used to produce them traveled in commerce"). The government relied on the second alternative, offering undisputed evidence that Lacy's computer hard drive, monitor, and disks had traveled in interstate commerce. Lacy argues this evidence is insufficient because the visual depictions were not "produced" by his computer.

"Producing" is defined as "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. § 2256(3). Lacy argues that in downloading the visual depictions, he was merely "reproducing" or copying them. Although the images on Lacy's computer were copies of the ones on the BAMSE system, they were created— "produced"—when Lacy used his computer to download data. The statute requires only that *visual depictions* be produced; it does not matter that the depictions on Lacy's computer were copies rather than originals.

## V.

Lacy's motion to suppress was properly denied. Although the jury instructions were erroneous, Lacy did not object to them. We will not correct these plain forfeited errors because they did not seriously affect the fairness of Lacy's trial. Finally, the jury's finding on the jurisdictional element was supported by substantial evidence.

AFFIRMED.