**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 14 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

LARRY WAYNE THOMPSON;
ROBERT JOHN NAUS,

      Defendants-Appellants.

Nos. 00-5206, 00-5237

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. Nos. 99-CR-135-C, 00-CR-66-C)**

---

Jack Schisler, Assistant Federal Public Defender (Stephen J. Knorr, Federal Public Defender, with him on the brief), Office of the Federal Public Defender, Tulsa, Oklahoma, for Defendants-Appellants.

Neal B. Kirkpatrick, Assistant United States Attorney (Thomas Scott Woodward, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

---

**KELLY**, Circuit Judge.

This decision consolidates two cases from the Northern District of Oklahoma. Larry Wayne Thompson and Robert John Naus appeal their sentences for knowingly possessing "any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography . . . ." 18 U.S.C. §2252A(a)(5)(B). The sole issue on appeal is whether the district court erred in sentencing by applying a two-level enhancement for possession of ten or more "items" pursuant to § 2G2.4(b)(2) of the 1998 United States Sentencing Guidelines, which provides: "If the offense involved possessing ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor, increase by **2** levels." United States Sentencing Commission, Guidelines Manual, § 2G2.4(b)(2) (Nov. 1998). The district court interpreted the term "items" to include computer files on the disks rather than the disks themselves. We affirm.

Background

Mr. Thompson was found in possession of child pornography after a South Carolina customs agent informed an Oklahoma City customs agent that Mr. Thompson had sent 17 child pornography images to a South Carolina target. Hundreds of visual depictions of minors engaged in sexually explicit activity were found on Mr. Thompson's computer with more such depictions on compact disks

and floppy disks. Notwithstanding the hundreds of files, the prohibited material was contained on fewer than ten computer hard disks, compact disks, or floppy disks. On April 20, 2000, Mr. Thompson pled guilty to eight counts of violating 18 U.S.C. § 2252A(a)(5)(B). He was sentenced to thirty months imprisonment based in part on a two-level enhancement under U.S.S.G. § 2G2.4(b)(2) for possessing ten or more computer files containing child pornography.

Mr. Naus was found in possession of child pornography as well. Western Union records obtained by customs showed that Mr. Naus sent $100 to persons in Moscow, Russia who were trafficking in child pornography. During an initial search, Mr. Naus indicated that he believed he had downloaded approximately 500 images of child pornography. Four disks were discovered with 136 images of children engaged in sexually explicit conduct with other children, adults or both. After seizure of Mr. Naus's computer system and floppy disks, an agent discovered an additional three images of child pornography on another disk. Two super floppy disks (which can store 120 MB of data, in contrast to a regular floppy disk that can store 1.44 MB) contained 284 and 72 images of child pornography. Thus, 495 visual depictions of minors engaged in sexually explicit conduct were found on five floppy disks and two "super floppy" disks.

On June 26, 2000, Mr. Naus entered a guilty plea to one count of violating § 2252A(a)(5)(B). He was sentenced to twenty-seven months imprisonment as a

result of a two-level enhancement under § 2G2.4(b)(2). Both Mr. Thompson and Mr. Naus were also sentenced to three years supervised release following imprisonment. On appeal, Messrs. Thompson and Naus contend that neither of them possessed more than ten "items" as prescribed by § 2G2.4(b)(2), if that term is understood to refer to the media on which images of child pornography were stored rather than the files themselves. The government responds that in § 2G2.4(b)(2) each computer graphics file maintained on a computer hard drive, floppy disk, or other storage medium constitutes a separate "item."

## Discussion

We review de novo a district court's legal interpretation of the guidelines. United States v. Gacnik, 50 F.3d 848, 852 (10th Cir.1995). The guidelines are interpreted as though they were a statute or court rule, with ordinary rules of statutory construction. United States v. Tagore, 158 F.3d 1124, 1128 (10th Cir. 1998). Adopting a narrower interpretation is at odds with our precedent:

> While we apply the rule of strict construction to criminal statutes, and by extension to the Guidelines, that does not mean the Guidelines must be given their narrowest possible meaning. Rather, the rule of strict construction is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers.

United States v. Reaves, 253 F.3d 1201, 1203 (10th Cir. 2001) (quotations and citations omitted).

As noted, the statute, § 2252A(5)(B) speaks of knowing possession of "any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography" and the guideline speaks of possession of "ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor." U.S.S.G. § 2G2.4(b)(2).

While it is true that the two are largely symmetrical, "computer disk" stands alone in the statute, as does "items" in the guideline. Although the issue is one of first impression in this circuit,[1] two courts considering convictions under § 2252A(a)(5)(B) have determined that the term "items" in § 2G2.4(b)(2) means computer files, not the entire disk. See United States v. Harper, 218 F.3d 1285, 1287 (11th Cir. 2000) (per curiam); United States v. Perreault, 195 F.3d 1133, 1134-35 (9th Cir. 1999). Other courts have reached the same conclusion under a similar statute. United States v. Fellows, 157 F.3d 1197, 1200-02 (9th Cir. 1998) (conviction under § 2252(a)(4)(B)); United States v. Demerritt, 196 F.3d 138, 141-42 (2d Cir. 1999) (same); United States v. Hall, 142 F.3d 988, 997-99 (7th Cir. 1998) (same); United States v. Wind, 128 F.3d 1276, 1278 (8th Cir. 1997) (conviction under § 2252(a)(4)).

---

[1] This is also a case of limited applicability as § 2G2.4(b)(2) was amended in November of 2000 to make the term "items" include computer files. We discuss this further below.

Merely because the statute includes the term "disk" and the guideline includes the term "items" does not necessarily mean that the two must be equated. As the panel observed in Perreault, the statute may criminalize knowing possession of a computer disk, while the guideline addresses culpable conduct in connection with that possession of the disk, here the number of files on the disks. Perreault, 195 F.3d at 1134-35. Stated another way, the fact the statute criminalizes certain conduct has never meant that a court is restricted to the offense of conviction when deciding the appropriate sentence. United States v. Watts, 519 U.S. 148, 151-154 (1997) (per curiam); Witte v. United States, 515 U.S. 389, 397-98 (1995). Thus, the guidelines employ the concepts of relevant conduct, and offense levels under the applicable offense guideline are determined in part based upon specific offense characteristics, including relevant conduct. U.S.S.G. §§ 1B1.1(a) & (b); 1B1.2(b); 1B1.3(a)(1)(A) (specific offense characteristics to be determined based upon "all acts and omissions committed . . . by the defendant"); 1B1.3, cmt (n.2) ( "With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved . . . .") (Nov. 1998).

We turn next to the placement and purpose of the words "other items" in the scheme envisioned by the guidelines. See Reaves, 253 F.3d at 1203. Defendants argue that although "other items" is not defined in the 1998 version of

the guidelines, the context of § 2G2.4(b)(2) makes it clear that it refers to containers beyond those specifically listed (books, magazines, periodicals, films, and video tapes, containing visual depiction). They correctly point out that each of the listed containers can contain multiple images, just as computer disks, compact disks, and zip disks can. According to the Defendants, "[t]o say that a graphic image file is the container holding the image would be the equivalent of saying that the square of cardboard that makes up the Polaroid is the container for the photograph, or even the piece of canvas upon which DaVinci painted was merely the container for the Mona Lisa." Aplts. Br. at 15. We think this argument underestimates the importance of a file when it comes to computers. A file is a collection of information (such as text, numbers, graphics, sound or video) stored on a particular medium. A file is always in a particular format. A graphic image does not exist without a file--the format of the file defines the image. A file extension after the name of the file tells the computer which program or application is required to utilize the information.

In <u>Fellows</u>, the court concluded that the nearest computer analogue to "books, magazines, periodicals, films, [and] videotapes" was files because "[v]isual depictions in a computer are compiled and stored in graphics files, much like photographs are compiled and stored in books or magazines. . . . [T]he computer user can separately view, copy, delete, or transmit each discrete

graphics file." Fellows, 157 F.3d at 1201. It might appear that by this logic, each page or individual piece of paper in a book, magazine or periodical, or each frame in film or videotape, qualifies as a container and an "item" for the enhancement. But as a practical matter, an individual page or a frame simply lack the world-wide portability and transmissability of discrete computer files, which may be "contained" in a variety of storage media, e.g. hard disk, floppy disk, CD, or zip disk, and are transported electronically far more easily than the listed items.

Electronic files do need a medium or "container" to be encoded, but it is doubtful that the drafters of the guideline intended the enhancement to be applied based upon the fortuitousness of the storage media when it came to computers, even in 1992 when the guideline was adopted. See Demerritt, 196 F.3d at 141-142. Graphic images are usually conveyed file by file; how they are stored varies from user to user. The dissent contends that our interpretation of the guideline, which would be correct in the late-1990's, was unimaginable in 1992. Modem speeds, internet access, operating systems and storage capability have all improved since 1992, but the basic unit of storage, use, portability and transmissability--the file--remains. It is also worth noting that our Fourth Amendment cases have rightly concentrated the analysis on computer files. See, e.g., United States v. Walser, 275 F.3d 981, 986 (10th Cir. 2001) ("The advent of

the electronic age and, as we see in this case, the development of desktop computers that are able to hold the equivalent of a library's worth of information, go beyond the established categories of constitutional doctrine. Analogies to other physical objects, such as dressers or file cabinets, do not often inform the situations we now face as judges when applying search and seizure law."); United States v. Carey, 172 F.3d 1268, 1275 (10th Cir. 1999).

In sum, after our analysis and those of our sister circuits, we are not left with a reasonable doubt about the scope of the guideline when it comes to this this situation. See Moskal v. United States, 498 U.S. 103, 108 (1990). The rule of lenity is a rule of last resort, reserved for when a guideline suffers from grievous ambiguity or uncertainty. Chapman v. United States, 500 U.S. 453, 463 (1991); Tagore, 158 F.3d at 1128 n.3. An alternative interpretation of the guideline, standing alone, is insufficient to invoke the rule. Moskal, 498 U.S. at 108. While the dissent and the Defendants have come up with another interpretation, we think we have found a reasonable interpretation.

In the alternative, we could consider an amendment to the commentary to § 2G2.4 and reach the same result. A subsequently enacted amendment may be applied retroactively, provided it is merely a clarifying amendment. United States v. Gigley, 213 F.3d 503, 506 n.3 (10th Cir. 2000). Amendment 592 added the following commentary:

2. For purposes of subsection (b)(2), a file that (A) contains a visual depiction; and (B) is stored on a magnetic, optical, digital, other electronic, or other storage medium or device, shall be considered to be one item.

If the offense involved a large number of visual depictions, an upward departure may be warranted, regardless of whether subsection (b)(2) applies.

U.S.S.G. § 2G2.4, cmt (n.2) (Nov. 2000).

Whether the amendment is applicable, however, depends on whether it is clarifying or substantive. *See* U.S.S.G. § 1B1.11(b)(2) (Nov. 1998). Amendment 592, which took effect November 1, 2000, after the plea agreement and sentencing by the district court, merely clarifies the guideline applied by the district court. Under section 1B1.11(b)(2), a court "shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." See United States v. Alvarez-Pineda, 258 F.3d 1230, 1236 (10th Cir. 2001). As to the reason for the amendment, the Commission wrote:

> [T]he amendment clarifies the meaning of the term "item" in subsection (b)(2) of §2G2.4 . . . . The amendment adopts the holding of all circuits that have addressed the matter that a computer file qualifies as an item for purposes of the enhancement. The amendment also provides for an invited upward departure if the offense involves a large number of visual depictions of child pornography, regardless of the number of "items" involved. This provision invites courts to depart upward in cases in which a particular item, such as a book or a computer file, contains an unusually large number of pornographic images involving children."

Id. Supp. to App. C. at 51 (2000).

Distinguishing between amendments that are substantive and those that merely clarify is, at times, a difficult task, but not in this case. See Alvarez-Peneda, 258 F.3d at 1236. In United States v. Kissick, 69 F.3d 1048, 1052 (10th Cir. 1995), this court laid out factors which tend to show that an amendment is for clarification purposes rather than a substantive change: 1) it does not overrule existing precedent; 2) it revises a commentary note rather than a guideline; and 3) the authors characterized it as clarifying. Applying these factors in analyzing the amendment to section 2G2.4(b)(2), we conclude that the amendment is merely clarifying. The amendment affirmed the conclusions of the four circuits that had previously ruled on the guideline, the amendment revised commentary, and the Commission characterized the amendment as clarifying. Thus, the amendment may be applied retroactively to the Defendants. See Gigley, 213 F.3d at 506 n.3.

AFFIRMED.

**Nos. 00-5206, 00-5237, <u>United States v. Larry Wayne Thompson</u>**


**SEYMOUR**, Circuit Judge, dissenting


I am unable to join the majority's opinion. I am not persuaded the United States Sentencing Guidelines Commission and Congress intended the term "other items" to include computer files rather than computer disks. Furthermore, I believe the vagueness of U.S.S.G. § 2G2.4(b)(2) at least requires that we apply the rule of lenity in this case. United States Sentencing Commission, <u>Guidelines Manual</u> (Nov. 1998). With all due respect, I dissent.


I

When Congress created the Sentencing Guidelines Commission, it fundamentally altered the nature of the judicial and legislative roles in determining criminal punishment. Prior to promulgation of the guidelines, courts had wide latitude in assigning punishments for people convicted of crimes. A central goal of the guidelines was to take such latitude away from individual judges, instead requiring adherence to a set of pre-determined rules. U.S.S.G. Ch. 1, Pt. A., intro. comment. In essence, Congress replaced the common law system of sentencing that had long been in place with a civil code system. In a civil code system,

> [t]he picture of the judicial process that emerges is one of fairly routine activity. The judge . . . is presented with a fact situation to which a ready

> legislative response will be readily found in all except the extraordinary case. His function is merely to find the right legislative provision, couple it with the fact situation, and bless the solution that is more or less automatically produced from the union.

JOHN HENRY MERRYMAN, THE CIVIL LAW TRADITION 36 (2d ed. 1985).

In such a system, judges have less reason to interpret statutes. By adopting the sentencing guideline system, the legislative branch has removed much of this responsibility from independent judges in favor of a body that can incorporate new policy concerns and empirical research while maintaining uniformity in sentences. U.S.S.G. Ch. 1, Pt. A, intro. comment at 4. Accordingly, the sentencing guidelines are reissued on a regular (almost annual) basis. Id. at 1-4. If new situations present themselves, if technology changes, it is now the prerogative of the Sentencing Guidelines Commission to revise and amend the guidelines to reflect such changes. For sentencing purposes, then, judges should not read present circumstances into past guidelines.

If we are to be bound by the sentencing guidelines, as I acknowledge we are, then we should also exercise caution in our reading of them, being careful to interpret them narrowly. The Commission has the power to revise and amend guidelines with relative ease. U.S.S.G. Ch. 1, Pt. A, intro. comment at 1-2. If we offer a narrower reading of ambiguous provisions than the Commission wishes, the Commission can easily make clear its intent, as it did by amending the guideline in the case now before us.

The guideline we interpret here was originally adopted in 1992 and provides: "If the offense involved possessing *ten or more* books, magazines, periodicals, films, video tapes, *or other items*, containing a visual depiction involving the sexual exploitation of a minor, increase by **2** levels." U.S.S.G. § 2G2.4(b)(2) (Nov. 1998) (emphasis added). The majority believes that the meaning of "other items" in the computer context is quite plain. It readily adopts the Ninth Circuit's reasoning in United States v. Fellows, 157 F.3d 1197, 1200-02 (9th Cir. 1998). However, the Ninth Circuit, and by extension the majority interpretation here, reads "other items" in the technological context of the late 1990s, thus reading into it a meaning that was not imaginable earlier in that decade when the guideline was adopted.

In Fellows, the Ninth Circuit held that the plain meaning of the term "item" in section 2G2.4(b)(2) included computer files. Id. at 1202. The court's analysis turned on the fact that a computer user can "separately view, copy, delete, or transmit each discrete graphics file," id. at 1201, and that "a graphics file can store one or more visual depictions." Id. Prior to the decision in the instant case, two circuits had relied on Fellows in ruling on the issue now before us. See United States v. Harper, 218 F. 3d 1285, 1287 (11th Cir. 2000) (construing section 2G2.4(b) in light of 18 U.S.C. § 2252A(a)(5)(B)); United States v. Perreault, 195

F.3d 1133, 1134 (9th Cir. 1999) (same). One circuit had followed <u>Fellows</u> in construing the guideline in light of 18 U.S.C. § 2252(a)(4)(b). <u>See</u> <u>United States v. Demerritt</u>, 196 F.3d 138, 141 (2d Cir. 1999).

I am not convinced by the Ninth Circuit's conclusion and the cursory opinions of the courts that have followed it, particularly when considered in the context of the statute to which Mr. Thompson and Mr. Naus pled guilty. The advent of the Internet, and its use as a means of distributing child pornography, has forced many courts to parse the ambiguous meanings of statutes written prior to the technology boom of the past decade. Statutes written and amended in the early 1990s were, by the end of that decade, no longer as clear. As a result, the meaning of the guideline is not plain and requires application of the canons of statutory construction.

## Canons of Construction

*A.    Lists and other associated terms*

Because there is no plain meaning for "item" in section 2G2.4(b)(2), we must resort to the canons of statutory construction to resolve the ambiguity in the language.  Two aids assist us in this process:  *noscitur a sociis* and *ejusdem generis*.  The first states that when "the legislative intent or meaning of a statute is not clear, the meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases."  2A NORMAN J.  SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.16 (5th ed. 1992).  The second states, "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  Id. at §47.17.

The question is whether a computer disk of any sort or a computer file is an item "similar in nature" to those items listed.  The parties in this case have focused on the term "contain" used in the guideline as it modifies the term "item."  To qualify as an "item," they argue, the thing in question must qualify as a "container"of one sort or another.

The central problem rests on which thing, a computer disk or a computer file, is most like "books, magazines, periodicals, films, and video tapes."  U.S.S.G.

§ 2G2.4(b)(2). The items listed all consist of collections of a combination of images, text, and/or sound. Unfortunately, the computer and cyberspace analogue to the class of items listed in the guideline is not at all obvious. The court in Fellows reasoned, "The commonality between the 'items' specifically enumerated in the section is that they are all discrete containers for visual depictions capable of being separately manipulated and distributed." Fellows, 157 F.3d at 1201. Because "the computer user can separately view, copy, delete, or transmit, each discrete graphics file," the court concluded a computer file constituted an "item" under the guideline. Id. at 1201-02.

By this logic, however, a page of a book, magazine, or periodical could be considered a container, contrary to the intent manifested in the guideline. After all, a page or individual piece of paper can be used to "compile" and "store" multiple visual depictions. A page from any newspaper contains multiple photographs, advertisements, and discrete news stories, yet we would not consider an individual newspaper page an "item" under the guideline. See United States v. Dauray, 215 F.3d 257, 262 (2d Cir. 2000). The majority counters that a key distinction lies in the fact that computer files possess a "world-wide portability and transmissiblity." Maj. op. at 8. This is, of course, true – today. However, the

-6-

technology that makes such portability and transmission possible today was either non-existent or in a primordial state at the time the guideline was passed.[1]

Messrs. Thompson and Naus argue that a container is a thing that physically stores within it the graphic images, just as a book, magazine or videotape contain images. Their argument makes sense as well. Computer disks are used as containers for discrete images in the form of data. Computer data cannot exist without a disk in much the same way that a video image cannot exist without the tape on which it is recorded. Similarly, a computer file, without a medium on which to be encoded, no more exists than a printed image can exist without paper. It is arguably the disk that contains the image, while the separate files organize the data thereon.

The disagreement here is understandable. In <u>Dauray</u>, 215 F.3d at 260, the Second Circuit engaged in a similar attempt to interpret the meaning of the word

---

[1] In 1991, while hard disk technology existed that could store anywhere between 5 Megabytes (MB) and 3 Gigabytes (GB) of data, PHILIP E. MARGOLIS, RANDOM HOUSE PERSONAL COMPUTER DICTIONARY 136 (1991), due to electronic and system limitations, few personal computers could support hard drives larger than 528 MB. Historical Notes about the Cost of Hard Drive Storage Space, *available at* http://www.alts.net/ns1625/winchest.html. 3½ floppy disks were the most common removable storage media in personal computers at that time, and they could hold a maximum of 1.44 MB of data. MARGOLIS, PERSONAL COMPUTER DICTIONARY at 187-88. 1 MB holds the equivalent of 500 pages of written text, much less in the case of graphics. ROBIN WILLIAMS & STEVE CUMMINGS, JARGON: AN INFORMAL DICTIONARY OF COMPUTER TERMS 65-55, 333 (1993).

"matter" as used in 18 U.S.C. § 2252(a)(4)(B), which at the time made it a crime to knowingly possess "3 or more books, magazines, periodicals, films, videotapes, or other *matter* which contain any visual depiction. . . ." (emphasis added). In interpreting the word "contain" as used in that statute, the court found two equally plausible definitions. First, "to contain" could mean "to have within: hold." Id. Second, "to contain" could mean "to consist of wholly or in part: comprise, include." Id. The defendants in Dauray argued, as do Messrs. Thompson and Naus, that "a picture is not a thing that contains itself." Id. The government in Dauray asserted that the paper and ink on which the images were printed were the "matter" containing the picture. Id. Here, the majority makes a similar argument, that the computer file *contains* the image in line with the second definition.

While both arguments are plausible interpretations, such conjecture is not convincing either way as to whether the framers of the guideline believed that a computer file contains an image or is the image itself (much like a Polaroid photo or an image on a page within a book or magazine). When guideline section 2G2.4(b)(2) was adopted in 1992, the internet was in its infancy and data storage was not nearly as advanced as it is today. See supra note 1. Disks could hold much less, making them more akin to a book or magazine than a library. When the framers drafted the guideline, therefore, it is more likely that they considered the computer disk to be analogous to an "item" under the guideline. Because these

means of construction prove non-dispositive, however, we turn to related statutes in hopes of drawing a conclusion as to the *framers'* intent.

2.      *Statutory Structure*

"[A] statute is to be considered in all its parts when construing any one of them." Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36 (1998).  Guideline section 2G2.4 was written to apply to 18 U.S.C. §2252(a)(4). U.S.S.G. § 2G2.4(b)(2), comment.  Section 2252(a)(4)(B) makes it a crime to possess "books, magazines, periodicals, films, video tapes, or *other matter* which *contain* any visual depiction, . . ." of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B) (emphasis added).  In its argument, the government points to other circuits' interpretations of this statute as helpful in construing the sentencing guideline.  Aplee. Br. at 9.  In my judgment, however, these cases reveal the confusion surrounding such language.  Three courts have interpreted the meaning of "other matter."  They have split on whether the term encompasses computer disks or the computer files thereon.

In United States v. Lacy, 119 F.3d 742 (9th Cir. 1997), the court concluded that "matter" is the "physical medium that contains the visual depiction – in this case, the hard drive of [the] computer and the disks. . . ." Id. at 748.  It reached this conclusion by applying the two principles of statutory interpretation discussed above, *noscitur a sociis* and *ejusdem generis*, concluding as it did because

"matter" appeared at the end of a list of "physical media capable of containing images." Id.

In Dauray, 215 F.3d 257, the defendant was found in possession of thirteen unbound pictures of minors. Id. at 259 ("The pictures were pieces of magazine pages and photocopies of those pages."). After employing the canons of construction, the Second Circuit concluded that the statute's meaning was irretrievably ambiguous and applied the rule of lenity. Id. at 264-65.

In United States v. Vig, on the contrary, the Eighth Circuit held "other matter" to mean "simply something which, at a minimum, must be capable of containing a visual depiction." 167 F.3d 443, 447 (8th Cir. 1999). The court continued, "To conclude, as defendants argue, that a hard drive is the computer equivalent of a book, magazine, periodical, etc., would result in the absurd scenario where an individual who possesses three books with one visual depiction apiece violates the statute, but an individual with hundreds of images on a hard drive does not." Id. at 448. The dissenting judge asserted that the majority's conclusion led to a similarly absurd result where "someone who possessed three books containing one proscribed image each would be in violation of the statute, while someone who possessed a computer *file* containing hundreds of such images would not be." Id. at 451 (Arnold, M., J., dissenting) (emphasis added). His dissent concluded,

Is a hard drive like a book or a library? Is it significant that computer files can be made into tangible objects by printing, or is printing from files just like tearing pages from a book? These kinds of inquiries can only give rise to speculation about congressional intent, and to guesswork about which of two reasonable alternative constructions is the right one.

Id.

The statute under which Messrs. Thompson and Naus were charged does not suffer from such ambiguity. The Child Pornography Protection Act of 1996, 18 U.S.C. § 2252A, was passed to supplement current federal statutes by filling gaps left by previously existing legislation such as 18 U.S.C. § 2252, enacted in 1978. The Senate Judiciary Committee Report said, "This legislation is needed due to technological advances in the recording, creation, alteration, production, reproduction, distribution and transmission of visual images and depictions, particularly through the use of computers." S. REP. NO. 104-358, at 7 (1996). As we noted above, section 2252A(a)(5)(B), the statute to which defendants here pled guilty, criminalizes the knowing possession of "any book, magazine, periodical, film, videotape, *computer disk*, or any other material that contains an image of child pornography. . ." (emphasis added). Section 2252(a)(4)(B), on the other hand, does not include computer disk in its list of "1 or more books, magazines, periodicals, films, videotapes, or other matter."[2]

_____

[2] 18 U.S.C. § 2252(a)(4)(B) was amended in 1998 to change "3 or more" to "1 or more." Pub. L. 105-314, § 203(a)(1) (1998).

The Sentencing Guidelines Manual directs judges to use section 2G2.2 or 2G2.4 to sentence those convicted under 18 U.S.C. § 2252A. U.S.S.G., App. A at 433. Only two cases have construed section 2G2.4(b)(2) in light of § 2252A. See Harper, 218 F.3d at 1286; Perreault, 195 F.3d at 1133. Neither case submitted the ambiguous guideline to analysis in light of the plain language of the statute upon which the convictions in those cases, and in the present case, were based.

Where 18 U.S.C. § 2252 is ambiguous as to whether "other matter" means computer disks or computer files, section 2252A is crystal clear, making it a crime to "knowingly possesses any . . . *computer disk*, or any other material that contains an image of child pornography. . . ." 18 U.S.C. § 2252A(a)(5)(B) (emphasis added). This statute deals with much the same subject matter as § 2252(a)(4)(B), but it was written in the internet age and its language provides assistance in understanding the intended meaning of ambiguous terms such as "matter" and "items" in similar statutes. Unlike § 2252 and the guideline, § 2252A includes the computer analog in the list of "books, magazines, periodicals. . ." as "computer disks." In 1996, when computer software and hardware technology had advanced to a point much closer to that of today, the framers of § 2252A specifically chose to punish people for possession of computer *disks* containing child pornography, rather than for possession of computer *files*. Thus, when Congress gave us its most recent conception of what would constitute "other matter" or "other items," it

-12-

settled on computer disks, rather than files.[3]  I am thereby convinced that the term

"other items" as used in U.S.S.G. § 2G2.4(b)(2) was intended to include computer

disks, rather than computer files.[4]

While I would hold that "other items" as used in section 2G2.4(b)(2)

includes computer disks but not computer files, at the very least the majority

should acknowledge that the changes in technology and statutory language have

made the guideline ambiguous and thus require application of the rule of lenity.

The rule of lentiy requires courts to interpret ambiguous statutes, including the

sentencing guidelines, in favor of criminal defendants.  United States v. Gay, 240

F.3d 1222, 1232 (10th Cir. 2001).  While the rule is to be applied only in cases of

"grievous ambiguity," United States v. Onheiber, 173 F.3d 1254, 1256 (10th Cir.

1999), the ambiguity here is grievous as the two possible interpretations render

radically different results for sentencing purposes.

---

[3]At no place in the legislative record could I find any debate over whether the language should be amended to include computer files.

[4] The majority also maintains that our decisions in Walser and Carey have "rightly concentrated" their analysis on computer *files* rather than computer disks. Maj. op. at 8.  See United States v. Walser, 275 F.3d 981 (10th Cir. 2001); United States v. Carey, 172 F.3d 1268, 1275 (10th Cir. 1999).  I could not agree more. There exists a key distinction between Carey and Walser and the case now before us, however.  Those cases interpret the Fourth Amendment and it is within our bailiwick to construe the Constitution in light of changing circumstances.  For reasons stated at the beginning of this opinion, however, such is not the case with the sentencing guidelines, which are to be amended and revised by the Commission and Congress.  We merely narrowly interpret and apply them.

## IV

Finally, the majority contends the issue in this case is answered by an amendment to the commentary to section 2G2.4. Amendment 592 adopted the Fellows interpretation of the section at issue. The commentary to the amendment asserts that it is merely clarifying and the majority accepts this characterization. I am not persuaded it is so clear. The Commission's characterization is entitled to some deference but it is not dispositive. United States v. Frederick, 897 F.2d 490, 494 (10th Cir. 1990). In United States v. Kissick, 69 F.3d 1048, 1052 (10th Cir. 1995), this court laid out factors which *tend* to show that an amendment is for clarification purposes rather than substantive. The majority rightly points out that the three Kissick factors are satisfied here. The Kissick factors do not necessarily end the inquiry, however, especially in a case such as this.

In this case, analysis of the guideline in light of the underlying statute of conviction, which is plain on its face in its coverage of computer disks, convinces me that the ambiguous term "items" in the pre-amendment guideline incorporates computer disks and not computer files. Consequently, the 2000 amendment to U.S.S.G. § 2G2.4(b)(2) represents a *substantive* change to the subsection. By amending the guideline to incorporate files, the amendment greatly expands the punishment for a person convicted under § 2252A. See United States v. Mondaine, 956 F.2d 939, 942 (10th Cir. 1992) (finding an amendment substantive

-14-

because it broadened the range of violations countable in calculating sentence).

See also United States v. Cianscewski, 894 F.2d 74, 78 n.13 (3d Cir. 1990)("We do not suggest that the Sentencing Commission, by declaring that substantive changes are intended merely as clarifications, can amend the guidelines retroactively."); United States v. Washington, 66 F.3d 1101, 1104 (9th Cir. 1995)("Regardless of the Sentencing Commission's stated intent, an amendment does not apply to crimes committed before its effective date if it changes the substantive law.").

This is not to say that the Sentencing Commission lacks the authority to make such an amendment to the guidelines. Its role in the promulgation, review, and revision of the guidelines is well established. See Neal v. United States, 516 U.S. 284, 291 (1996). Rather, after analyzing the guideline in light of the statute under which defendants were convicted, if we are left with the firm conviction that the amendment effected a substantive change on the functioning and impact of the guideline, we should consider that guideline amendment substantive and, therefore, not retroactive. As the Sixth Circuit wrote in a similar case,

> A petitioner is entitled to the advantage of receiving the sentence he would have received had the Commission initially drafted an unambiguous provision. It is unfair to punish a defendant for the Commission's lack of clarity, especially when the Commission acknowledges and corrects the ambiguity.

Jones v. United States, 161 F.3d 397, 403 (6th Cir. 1998).

**V**

Considering the ambiguity of the guideline and the major changes that have occurred in computer technology in the past decade, the above factors convince me that the majority's opinion is not only incorrect, but oversteps the bounds of the judiciary's responsibility under the current sentencing regime. It is not our job to broadly construe the guidelines to reflect new technological situations. In any event, the rule of lenity requires us to construe the ambiguous guideline in favor of defendants.

For these reasons, I respectfully **DISSENT**.