UNITED STATES of America, Plaintiff–Appellee,

v.

Russell Lane WALSER, Defendant–Appellant.

No. 01–8019.

United States Court of Appeals, Tenth Circuit.

Dec. 28, 2001.

---

Michael G. Katz, Federal Public Defender, and Jenine Jensen, Assistant Federal Public Defender, Denver, CO, for Defendant–Appellant.

John R. Green, Interim United States Attorney, and David A. Kubichek, Assistant United States Attorney, District of Wyoming, Casper, WY, for Plaintiff–Appellee.

Before SEYMOUR and HOLLOWAY, Circuit Judges, and VAN BEBBER,* Senior District Judge.

SEYMOUR, Circuit Judge.

Russell Lane Walser appeals the district court's denial of his motion to suppress evidence garnered in two searches of his personal computer. He also appeals the district court's imposition of a special condition of supervised release that prohibits him from using the Internet without prior permission from the United States Probation Office. For the reasons set out below, we affirm.

**I**

Viewing the evidence in the light most favorable to the government, as we must, *see United States v. Simpson,* 152 F.3d 1241, 1246 (10th Cir.1998), the record reflects the following. On June 1, 2000, the manager of the Radisson Hotel in Casper, Wyoming, went to Room 617 to check on a smoke alarm sounding there. The room was unoccupied. In the course of shutting off the alarm, the manager noticed two small plastic bags containing what he believed to be cocaine and marijuana. He contacted the local police, who arrived on the scene and secured the room without entering it. The police ascertained that Mr. Walser, who was accompanied by Debbie Wilcox, had rented the room earlier that day. The police found Mr. Walser and Ms. Wilcox in the hotel parking lot, sitting in Mr. Walser's car. They spoke with Mr. Walser who, during that conversation, told them he had brought a computer with him and set it up in the room.[1]

Based on the information gleaned from the hotel manager, the police investigation, and the conversation with Mr. Walser, police sought and obtained a search warrant covering Room 617 and Mr. Walser's car. The warrant granted permission to search for:

> Controlled substances, evidence of the possession of controlled substances,

---

\* The Honorable G. Thomas Van Bebber, United States District Court for the District of Kansas, sitting by designation.

1. The district court pointed out in its ruling on the motion to suppress that nothing in the affidavit accompanying the request for a search warrant indicated the police were aware of the presence of the computer.

which may include, but not be limited to, cash or proceeds from the sales of controlled substances, items, substances, and other paraphernalia designed or used in the weighing, cutting, and packaging of controlled substances, firearms, records, and/or receipts, written or electronically stored, income tax records, checking and savings records, records that show or tend to show ownership or control of the premises and other property used to facilitate the distribution and delivery [of] controlled substances. App. vol. I, Exh. B.

Armed with the warrant, Special Agent Steve McFarland of the Wyoming Division of Criminal Investigation (DCI) and local police entered Mr. Walser's room to conduct the search. While there they found, among other things, plastic bags containing what was believed to be marijuana, drug paraphernalia (including a glass tube, a butane torch, a roach clip, and syringes), a digital scale, a computer, and a digital camera attached to the computer. The computer was on when the police first entered the room and the computer's "wallpaper" showed an image of Ms. Wilcox that appeared to have been taken in Room 617.[2]

Special Agent McFarland sat down at the computer and did a cursory search of the hard drive. Based on his experience and a 40–hour "Cybercop" course he had completed, he had reason to believe there might be ledgers of drug transactions or images of drug use (taken with the digital camera attached to the computer) saved on the computer's hard drive. He began his search in the "My Documents" folder and opened approximately ten JPEG files.[3] These files contained images of adult pornography. Agent McFarland shut down the computer and seized it in anticipation of conducting a more thorough search at the DCI office.

Five days later, on June 6, Agent McFarland resumed his search of the computer at the Casper DCI office. In conducting the search, Agent McFarland followed a specific methodology. He first checked the "Recycle Bin" and found no relevant files.[4] He next used the "Windows Explorer" search mechanism to search the computer's hard drive. Through this technique, he opened the "Program Files" folder. Agent McFarland testified that based on his training and personal experience, most of the files containing evidence of drug transactions (i.e. address books, spreadsheets, databases) would be found there. He looked for and located a sub-folder containing Microsoft Works, a spreadsheet program. That folder contained approximately ninety files and four sub-folders. Agent McFarland opened the second file from the top, named "bstfit.avi."[5] When he did so, the "Compu-

---

**2.** The "wallpaper" is the graphic that appears behind the desktop on a Windows-based computer. This is not to be confused with a "screensaver" which is a graphic that appears on the screen when the computer is left idle.

**3.** JPEG is a computer technique for storing color images. It is one of several means of saving such images. JPEG files are usually saved with the ".jpg" suffix appended to the file name. *See* PHILIP E. MARGOLIS, RANDOM HOUSE PERSONAL COMPUTER DICTIONARY 266 (1996).

**4.** The "Recycle Bin" is the "trash can" on a computer running the Microsoft Windows operating system. It is the place where computer files are placed in anticipation of their deletion. Placement in the bin does not automatically delete files, however.

**5.** An "AVI" file, typically denoted by the ".avi" suffix appended to the file name, is an Audio Video Interleave format for viewing video files (as opposed to still graphics) on a Microsoft Windows-based computer. MARGOLIS, PERSONAL COMPUTER DICTIONARY 38 (1996).

pic" program started-up and a "thumbnail" image of the file appeared on the left side of the Explorer window.[6] Looking at the thumbnail, Agent McFarland saw images of girls engaged in sexual acts with men. Believing this to be child pornography, he enlarged the thumbnail and confirmed his belief.

Agent McFarland immediately ceased his search of the computer hard drive and contacted another agent in the DCI who had greater experience in computer forensics and child pornography. That agent told Agent McFarland to shut down the computer and submit an affidavit for a new search warrant specifically authorizing a search for evidence of possession of child pornography. Agent McFarland did so and obtained the warrant under which he conducted the search that produced the evidence in the present case.

Following a hearing at which the district court denied Mr. Walser's motion to suppress the evidence discovered in the searches of his computer, Mr. Walser pled guilty to one count of possession of child pornography and the court sentenced him to twenty-seven months imprisonment and three years supervised release. As a condition of that release, the district court required that Mr. Walser not have access to the Internet without prior permission of the probation office.

## II

■ Mr. Walser first maintains that DCI Special Agent McFarland lacked probable cause to seize the computer from the hotel room at the time of the original search. Mr. Walser acknowledges that he made no specific objection on this basis to the district court. We review issues not raised below for plain error. FED.

R.CRIM.P. 52(b). To notice plain error under Rule 52(b), the error must:

> (1) be an actual error that was forfeited; (2) be plain or obvious; and (3) affect substantial rights, in other words, in most cases the error must be prejudicial, i.e., it must have affected the outcome of the trial.... Given plain error that affects substantial rights, an appellate court should exercise its discretion and notice such error where it either (a) results in the conviction of one actually innocent, or (b) seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Keeling,* 235 F.3d 533, 538 (10th Cir.2000) (internal citation and quotation omitted). We apply the plain error rule less rigidly when reviewing a potential constitutional error. *United States v. Jefferson,* 925 F.2d 1242, 1254 (10th Cir.1991).

This court and other circuits have approved the seizure and storage of property when the facts of the case supported a finding that exigent circumstances existed. In *United States v. Hargus,* 128 F.3d 1358, 1363 (10th Cir.1997), we held that the seizure of an entire file cabinet was acceptable when such seizure was motivated by the impracticability of on-site sorting, among other factors. *See also United States v. Henson,* 848 F.2d 1374, 1383–84 (6th Cir.1988); *United States v. Tamura,* 694 F.2d 591, 597 (9th Cir.1982). The other concern relative to conducting such computer searches lies in the fact that computer evidence is vulnerable to tampering or destruction. *See United States v. Campos,* 221 F.3d 1143, 1147 (10th Cir. 2000) (quoting affidavit of FBI agent).

■ In the case before us, the size of the computer's hard drive—over 22 Gigabytes—combined with the importance that

---

6. A thumbnail is a miniature display of a page or image that enables you to see the layout of many pages or images on the screen at once. MARGOLIS at 481.

the search take place in a controlled laboratory setting, where proper forensic expertise and equipment would be available, provided sufficient exigency to support the district court's decision when analyzed under the plain error standard. We therefore hold that the district court's failure to *sua sponte* grant Mr. Walser's motion to suppress on grounds that the seizure of his computer lacked probable cause does not rise to the level of plain error.

Mr. Walser also argues that in opening an AVI file while conducting a search for records of drug transactions, Agent McFarland exceeded the scope of the warrant. For that reason, Mr. Walser contends the district court erred when it denied his motion to suppress evidence of the June 6 search of his computer. We review the denial of a motion to suppress for clear error. *See United States v. Griffin*, 7 F.3d 1512, 1516 (10th Cir.1993). Reasonableness of a search is reviewed de novo. *See United States v. Eylicio–Montoya*, 18 F.3d 845, 848 (10th Cir.1994).

In *United States v. Carey*, 172 F.3d 1268, 1275 n. 7 (10th Cir .1999), this court recognized the particular Fourth Amendment issues surrounding the search and seizure of computer equipment. *See also Campos*, 221 F.3d at 1148. The advent of the electronic age and, as we see in this case, the development of desktop computers that are able to hold the equivalent of a library's worth of information, go beyond the established categories of constitutional doctrine. Analogies to other physical objects, such as dressers or file cabinets, do not often inform the situations we now face as judges when applying search and seizure law. *See Carey*, 172 F.3d at 1274–75. This does not, of course, mean that the Fourth Amendment does not apply to computers and cyberspace. Rather, we must acknowledge the key differences and proceed accordingly.

The underlying premise in *Carey* is that officers conducting searches (and the magistrates issuing warrants for those searches) cannot simply conduct a sweeping, comprehensive search of a computer's hard drive. Because computers can hold so much information touching on many different areas of a person's life, there is a greater potential for the "intermingling" of documents and a consequent invasion of privacy when police execute a search for evidence on a computer. *See id.* at 1275; *see also United States v. Tamura*, 694 F.2d 591, 595–96 (9th Cir.1982). Thus, when officers come across relevant computer files intermingled with irrelevant computer files, they "may seal or hold" the computer pending "approval by a magistrate of the conditions and limitations on a further search" of the computer. *Carey*, 172 F.3d at 1275. Officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant. *Id.* at 1276.

Agent McFarland met the requirements of *Carey* in this case. Armed with a search warrant authorizing a search for electronic records of drug trafficking, Agent McFarland searched Mr. Walser's computer. Using a clear search methodology, Agent McFarland searched for relevant records in places where such records might logically be found. He began with the "My Documents" file, proceeded to the "Recycle Bin," and then, using the Windows Explorer search program, opened the "Program Files" folder. Rather than searching each sub-folder in the "Program Files" folder, Agent McFarland selectively proceeded to the "Microsoft Works" subfolder on the premise that because Works is a spreadsheet program, that folder would be most likely to contain records relating to the business of drug trafficking.

It was while searching the contents of the Works folder that Agent McFarland came across the file labeled "bstfit.avi" and opened it to see what it was. When he viewed the contents in thumbnail format he believed the file consisted of child pornography images. He enlarged the images to confirm that fact and, once he had, immediately suspended his search and went to a magistrate for a new warrant.

Mr. Walser contends Agent McFarland exceeded the scope of the search warrant when the Agent opened the AVI file. Because an AVI file is an audiovisual or video file, he argues, it could not possibly have contained the type of evidence the Agent was authorized to search for, namely, records of drug transactions or still images of drug use. The government counters that because computer files can be re-labeled to disguise their contents, an agent is free to open any file in order to determine its contents and that therefore, opening the AVI file did not exceed the scope of the warrant.

We leave the government's argument regarding "disguised" files for another day. We agree with the district court's determination that opening the "bstfit.avi" file did not constitute an impermissible broadening of the warrant. In *Carey*, the officer was engaged in a similar search for electronic records of drug dealing. As in this case, the officer in *Carey* inadvertently discovered the first image of child pornography while searching for documents relating to drug activity. *Carey*, 172 F.3d at 1274 n. 4. In *Carey*, however, after opening the first file, the officer's conduct was the opposite of that which occurred in the present case. Specifically, he proceeded to rummage through the hard drive for more images of child pornography despite the fact that he did not possess a warrant to conduct such a search. Had Agent McFarland conducted a more extensive search than he did here by rummaging in folders and files beyond those he searched, he might well have exceeded the bounds of the warrant and the requirements of *Casey*. The fact of the matter, however, is that no such wholesale searching occurred here. Agent McFarland showed restraint by returning to the magistrate for a new warrant before commencing a new search for evidence of child pornography.

Based on the facts found by the district court, we are persuaded the search was reasonable and within the parameters of the search warrant. Consequently, the denial of the motion to suppress does not constitute clear error.

**III**

 Mr. Walser argues that the district court erred when it imposed a special condition of supervised release barring his use of or access to the Internet without the prior permission of the United States Probation officer. We normally review sentencing determinations for abuse of discretion. *United States v. Pugliese*, 960 F.2d 913, 915 (10th Cir.1992). Mr. Walser, by his own admission, raised no objection to this condition at the time of sentencing. We review legal challenges to a sentence that were not raised below for plain error. *United States v. Lindsay*, 184 F.3d 1138, 1142 (10th Cir.1999).

 Courts are given broad discretion in the imposition of conditions of supervised release. Under statutory authority, however, such conditions must (1) be reasonably related to several factors set out on 18 U.S.C. § 3553;[7] (2) involve no great-

7. The factors are: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for deterrence; public protection; and providing effective rehabilitation of the defendant. 18 U.S.C. § 3553.

er deprivation of liberty than is reasonably necessary to address those factors; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a). 18 U.S.C. § 3583(d). *See also United States v. Edgin,* 92 F.3d 1044, 1048 (10th Cir.1996).

In *United States v. White,* 244 F.3d 1199 (10th Cir.2001), we overturned a special condition of probation requiring that the defendant "shall not possess a computer with Internet access throughout his period of supervised release." *Id.* at 1201. We found the condition simultaneously too narrow and overly broad. *Id.* at 1206. The condition was not reasonably related to prohibiting the defendant from all access to the Internet because it did not prohibit accessing the Internet in libraries, cybercafes, and other locales. *Id.* It was greater than necessary in the equation balancing protection of the public with the goals of sentencing as it prevented the defendant from using the Internet for important and legitimate means, including library research, reading newspapers, or looking at a weather report. *Id.*

In the case before us, the condition of release is not as ill-tailored as the one at issue in *White.* Here, Mr. Walser is not completely banned from using the Internet. Rather, he must obtain prior permission from the probation office. Thus, the condition more readily accomplishes the goal of restricting use of the Internet and more delicately balances the protection of the public with the goals of sentencing. It may nevertheless be questionable whether the condition imposes "no greater deprivation of liberty than is reasonably necessary" to meet the goals referred to in 18 U.S.C. § 3583(d), since the vagueness of the special condition leaves open the possibility that the probation office might unreasonably prevent Mr. Wal-

ser from accessing one of the central means of information-gathering and communication in our culture today. We are not persuaded this concern rises to the level necessary to clear the extremely high hurdle set by the plain error standard, however, and we decline to overturn the condition imposed by the district court.

We **AFFIRM** the conviction and the sentence imposed by the district court.