NOT DESIGNATED FOR PUBLICATION

No. 115,654

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ORION GRAF,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; BARBARA KAY HUFF, judge. Opinion filed June 16, 2017. Reversed and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., GREEN and BUSER, JJ.

*Per Curiam*:  Orion Graf appeals the district court's denial of relief on his K.S.A. 60-1507 motion without a hearing. The motion follows Graf's convictions on two counts of breach of privacy.

*Facts*

Graf's underlying criminal case began when an employee at the Gap clothing store in Lawrence discovered a small camera in a dressing room. The memory card in the camera contained videos of women in various states of undress. The card also contained a

1

photo of a man believed to be the person who placed the camera in the dressing room, later identified as Graf. A Gap employee later spotted Graf in the store and called the police. The police approached Graf at the store, and Graf consented to be interviewed. After a few questions, the officer detained Graf and, during a search of his person, seized two more memory cards and an adapter to allow memory card data to be transferred to a computer. The officer also recovered an Apple iPod Touch from Graf's person and saw in Graf's car in plain view two cameras similar to the one discovered in the dressing room.

The police then executed two search warrants for Graf's home and car, where they recovered several computers and an encrypted hard drive that contained pornographic videos, including videos of Graf engaging in sexual relations with his wife. Graf's wife stated that the videos were taken without her knowledge or consent.

*Criminal Proceedings*

The State charged Graf with 10 counts of breach of privacy. About 2 weeks before trial, and pursuant to a plea agreement with the State, Graf pled no contest to two of the counts—one involving the videos at the Gap store, and the other involving the videos of Graf and his wife. Under the agreement, the State agreed to dismiss the remaining charges.

At the plea hearing, Graf acknowledged that he read and initialed a 31-paragraph plea advisory regarding his constitutional rights, in which he affirmed that aside from the plea agreement, no one made any promises to him. The prosecutor stated on the record the terms of the plea agreement, which contained details such as Graf being required to receive a sexual offender evaluation, the results of which would be part of the terms of his probation, and the limits on his future access to computers and devices that have internet access, and his probation officer's right to random access to any such devices. Graf affirmed that he reviewed the plea agreement with his trial counsel; that he had

2

sufficient time to talk with his trial counsel about his case; and that he was satisfied with his trial counsel's advice. He affirmed that no one threatened, forced, or coerced him to enter his pleas or made any promises to induce him to enter his pleas, other than a discussion about the plea negotiations. The district court accepted Graf's no contest pleas and found him guilty on two counts.

Graf was a Ph.D. student at the University of Kansas where he taught anatomy, statistics, and anthropology. He lost these positions at the university as a result of these convictions. His wife divorced him and moved to Arizona. Graf moved there too to be close to their children. At the time of his sentencing, his only employment was delivering pizzas.

At his sentencing hearing in the month following his pleas, Graf stated that he "was not well" when he committed the crimes. His lawyer said Graf suffers from posttraumatic stress disorder based on traumas of childhood. His mother was in prison, his father was out of his life, and he was in foster care at about age 14. Graf explained that "right before all this happened" he suffered from a cancer scare and was told he may die within 3 months. He also explained that he was prescribed the highest legal dosage of amphetamines to treat attention deficit disorder while "other more serious psychological conditions went untreated." Graf asserted that, coupled with alcoholism, his judgment was not sound during that period of his life. He acknowledged that "[t]he highly unstable position" in which he found himself was not an excuse for his actions, and he expressed remorse for his crimes.

The district court sentenced Graf to 16 months' imprisonment, suspended imposition of the prison sentence, and ordered 24 months' probation with the possibility of transferring probation supervision to Arizona under the Interstate Compact. Graf did not pursue a direct appeal.

3

*Graf's K.S.A. 60-1507 Motion*

Exactly 1 year later, Graf filed the current K.S.A. 60-1507 motion in which he alleged numerous bases for relief: (1) law enforcement illegally searched his person; (2) law enforcement conducted an unlawful warrantless search of his electronic devices; (3) he was illegally arrested; (4) the search warrants were fatally overbroad; (5) law enforcement failed to execute the search warrants within 96 hours; (6) the prosecutor committed misconduct; (7) the district court's order compelling him to unlock an encrypted hard drive violated his Fifth Amendment rights; and (8) he was psychotic at his plea hearing. Graf also alleged his trial counsel was ineffective.

The State moved to dismiss Graf's motion, arguing that Graf's claims were supported by mere conclusory statements without a sufficient factual basis for relief. Addressing Graf's ineffective assistance of counsel claim, the State argued that Graf's claim that the search warrants were overbroad was misplaced. The State contended that "the search warrant affidavits specifically described the circumstance and nature of the crime being investigated . . . and the items seized pursuant to the executed search warrant had a logical nexus with the items listed in the warrant." But the State did not contend that the search warrants identified the files or file types on Graf's electronic devices that could be searched.

With respect to Graf's complaints about the prosecutor, the State argued: "Other than [Graf's] bald assertion, there [was] nothing in the record to indicate that his plea was coerced in any way." With regard to Graf's claim that he was incompetent to enter his pleas because of a psychotic condition, the State argued there was no evidence supporting this claim. The State highlighted Graf's cogent responses to the court's questions at the plea hearing.

4

In response, Graf claimed the prosecutor threatened to bring additional charges if Graf did not enter a plea. Graf asserted that his trial counsel stated that the State waived the right to bring additional charges by entering into the plea agreement. Thus, the State breached the plea agreement by later bringing additional charges based on evidence gathered from Graf's electronic devices.

Graf also clarified his claim that he was incompetent to enter no contest pleas, stating that his incompetency claim could be construed as a motion to withdraw his pleas. Graf readily admitted that his trial counsel could not be responsible for failing to identify his psychotic state. Graf asserted that "[o]nly trained psychiatrists and psychologists [were] qualified to identify and diagnose [his] serious mental illness."

The district court issued an order summarily denying Graf's K.S.A. 60-1507 motion. In doing so, the court took judicial notice of a recent criminal case in which Graf pled no contest to charges of attempted rape and aggravated criminal sodomy. Two weeks later, Graf moved to arrest judgment in that case on the grounds that the alleged crimes occurred in Missouri, not Kansas, and the victim was awake during the sexual acts, not unconscious or intoxicated. Graf obtained the dismissal of his attorney in that case on the grounds that he pressured Graf into entering his pleas when Graf was not competent to do so. Graf's new counsel later moved to permit Graf to withdraw his pleas, supporting the motion with a current psychological evaluation. In that evaluation, the psychologist opined that Graf "functions intellectually at a high level" and his thought processes are "'logical and coherent' with no appearance of 'disturbance of thought content.'" But based on Graf's description of his mental state at the time of his plea in this later case, the psychologist opined that Graf was "cognitively impaired" at the time. The motion to withdraw this later plea was still pending at the time of the court's summary ruling on Graf's current K.S.A. 60-1507 motion.

Turning to Graf's current K.S.A. 60-1507 motion, the district court found that Graf's claims were conclusory and without factual support and that Graf failed to cite any law or facts supporting his allegation that his trial counsel should have challenged the search warrants as overbroad. With regard to Graf's claim that he was incompetent to enter his pleas, the district court found that no facts supported that Graf suffered from psychotic delusions. Further, Graf failed to cite any law or facts supporting his prosecutorial misconduct claim, and the prosecutor was free to bring additional charges based on the discovery of additional cameras. Finally, the court found that the motions, files, and records of the case failed to establish manifest injustice and that the record showed that Graf "was fairly apprised of his rights, and the plea was fairly and understandingly made."

*Claims on Appeal*

Graf's appeal brings the matter to us. He claims the district court erred in summarily denying his motion because he asserted claims worthy of a hearing regarding (1) the prosecutor's breach of the plea agreement, (2) his incompetency to enter his no contest pleas, and (3) the ineffectiveness of his counsel in not seeking to suppress the evidence against him.

Graf also argues that the district court (1) improperly considered the proceedings in his more recent pending case, (2) imposed an improper burden on him in deciding the motion, and (3) failed to make adequate findings and conclusions. Because our review of Graf's motion is de novo, we need not consider these claimed procedural errors. We will examine Graf's motion and the record anew and make our own independent analysis of the motion.

6

*Review Standards*

As noted earlier, when the district court summarily denies relief, our review is de novo. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). When examining a defendant's K.S.A. 60-1507 motion, one of our options is to summarily deny relief if the motion, files, and case records conclusively show the prisoner is not entitled to relief. See *Fischer v. State*, 296 Kan. 808, 822-23, 295 P.3d 560 (2013). But the movant is entitled to an evidentiary hearing if the motion alleges facts which, if true, would entitle the movant to relief and the motion identifies readily available witnesses whose testimony would support such facts or other sources of evidence. *Swenson v. State*, 284 Kan. 931, 939, 169 P.3d 298 (2007).

*The prosecutor's breach of the plea agreement.*

First, Graf contends that the prosecutor breached the plea agreement in filing additional criminal charges against him. Graf alleges that as an inducement to enter a plea, the State promised not to file additional charges stemming from searches of his electronic devices and that the new charges are based on a search of his phone. He identifies the supporting witnesses as his attorney, the Lawrence police detective, and the prosecutor. He asserts that this claim was not raised in a direct appeal because "[t]his is the first such opportunity to present this ground."

The State argues that pursuant to Supreme Court Rule 183(c)(3) (2017 Kan. S. Ct. R. 222), Graf cannot use a K.S.A. 60-1507 motion as a substitute for a direct appeal absent a showing of exceptional circumstances. Supreme Court Rule 183(c)(3) (2017 Kan. S. Ct. R. 223) states:

> "A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for a direct appeal involving mere trial errors or as a substitute for a second appeal. Mere

7

trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal."

"Exceptional circumstances" have been defined to include "'"unusual events or intervening changes in the law which prevent a movant from reasonably being able to raise all of the trial errors in the first post-conviction proceeding."'" [Citation omitted.]" *State v. Mitchell*, 297 Kan. 118, 123, 298 P.3d 349 (2013).

Graf contends his current motion provided the first opportunity for him to present this issue. Graf entered into the plea agreement and pled no contest on May 2, 2014. Graf does not specify in his motion when the new charges were filed, but he states in his motion: "A search of Movant's Motorola Razr Smart Phone in early April 2014, see police records and warrant dated April 30, 2014, led McGowan to bring additional charges in violation of the plea agreement from April 30." In his appellate brief Graf asserts that these additional charges were filed "within a month of entering his plea." That would place the filing of these new charges sometime before June 2, 2014.

Graf was sentenced on June 30, 2014. Thus, at the time of his sentencing hearing, Graf was on notice of these new charges and could have raised in a direct appeal after sentencing his claim that the prosecutor breached the plea agreement by filing these new charges. Thus, Graf's statement in his motion that "[t]his is the first such opportunity to present this ground" does not stand in the face of the record before us. Graf's claim is of a trial error that should have been addressed in a direct appeal. Further, Graf has failed to present exceptional circumstances to now warrant consideration of this claim.

*Graf's competency to enter his pleas*

Graf alleged in his K.S.A. 60-1507 motion that because he was in a delusional state, he was not competent to accept the plea agreement. In his motion, he raises this issue in the section of the motion form for identifying claims of ineffective assistance of counsel. But he clearly does not claim his lawyer was ineffective with respect to this claim. Graf states:

"Beyond lawyer's control—Movant was in an unmedicated psychotic condition due to the onset of a serious mental illness during plea negotiations and hearing.
. . . .
"Because Movant was in a delusional state, he was not competent to accept a plea agreement. Movant had no memory of plea negotiations or plea hearing. Movant does not recall signing a plea agreement due to psychosis.—Mental health assessment would serve as evidence, as well as Bert Nash records that indicate a misdiagnosis and medication error. Movant was prescribed stimulants by Bert Nash staff, which unfortunately increased incident of psychotic delusions in those with bipolar disorder.—Any psych expert would attest to this."

It appears that Graf's claim is more properly construed as a postsentence motion to withdraw his pleas. In deciding whether to conduct an evidentiary hearing on such a motion, we must consider whether Graf's motion raises a substantial issue of fact or law. We may summarily deny a motion to withdraw pleas when the files and motions conclusively show that the defendant is not entitled to relief. *State v. Fritz*, 299 Kan. 153, 155, 321 P.3d 763 (2014).

K.S.A. 2016 Supp. 22-3210(d)(2) authorizes a district court to grant a defendant's postsentence motion to withdraw a plea when to do so will correct a manifest injustice. In considering whether Graf has demonstrated manifest injustice, we apply the factors set forth in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006): (1) whether Graf was

9

represented by competent counsel; (2) whether he was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether his pleas were fairly and understandingly made. See *State v. Green*, 283 Kan. 531, 545-46, 153 P.3d 1216 (2007). While the *Edgar* factors are "viable benchmarks for judicial discretion," they are not to be relied on to the "exclusion of other factors." *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 (2010).

As noted above, Graf does not contend that his trial counsel provided deficient representation in advising him to accept a plea. Nor does he claim that he was misled, mistreated, or unfairly taken advantage of. His sole claim relates to his mental state at the time of his plea hearing.

Graf's crimes were committed in November 2012 (videos of his wife) and February 2013 (videos at the Gap). At his plea hearing in May 2014, Graf's responses to the court's questions were cogent and appropriate.

At his sentencing hearing in June 2014, a month after his plea hearing, Graf was similarly cogent and articulate in his allocution. He spoke of events in his past which he contended were contributing factors for him committing these crimes in 2012 and 2013. He said he "was not well" when he committed the crimes. He explained that right before committing these crimes he suffered from a cancer scare and was told he might die within 3 months. He also explained that he was prescribed the highest legal dosage of amphetamines to treat attention deficit disorder while "other more serious psychological conditions went untreated." He asserted that because of this, along with his alcoholism, his judgment was not sound during the period when these crimes were committed. But he stated that since he was arrested in February 2013 (15 months before his plea hearing), he withdrew from the amphetamines, quit drinking alcohol, and received inpatient therapy. Rather than stating he had ongoing psychological problems that affected his cognitive abilities, he told the court at his sentencing, a month after his plea hearing, that he now feels "very stable in my life."

10

If Graf was in a psychologically delusional state at the time of his plea hearing, he experienced a rather miraculous recovery in the month that followed.

In *Edgar*, the Kansas Supreme Court articulated the standard used to determine whether a plea was knowingly, intelligently, and voluntarily made:

> "To be constitutionally valid, guilty pleas and their resulting waiver of rights 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' [Citation omitted.] A keystone of an intelligent plea is for the defendant to be informed of the nature of the charges. [Citations omitted.] Additionally, the defendant must be informed of the '[s]everal federal constitutional rights . . . .'" 281 Kan. at 36-37.

Although Graf makes allegations (which we assume to be true at this stage of the proceedings) which show he may have been suffered from "psychotic delusions," he does not claim that he lacked sufficient awareness of the relevant circumstances when he entered his pleas; nor does he claim that he lacked sufficient awareness of the likely consequences of his pleas.

He does not contend that he was not informed of the nature of the charges and his various constitutional rights. The record of the plea hearing dispels any such notion. Rather, he makes the conclusory statement that he was not competent to enter into the plea agreement. His support for this conclusion is that he does not remember the plea negotiations and does not remember signing the plea agreement or the plea hearing. But his claimed current lack of memory a year later does not establish that at the time of his pleas he did not knowingly, intelligently, and voluntarily enter them. The assertion of mental illness alone does not vitiate the validity of his pleas. Graf needed to present facts from which we can accept, at this stage in the proceedings, as affecting the validity of his pleas. In our de novo review we find none, so there is no basis for conducting an evidentiary hearing on this claim based on the record before us.

11

*Ineffective Assistance of Counsel*

Graf also asserts that his K.S.A. 60-1507 motion raises a substantial issue regarding whether his trial counsel was ineffective for failing to move to suppress the overbroad search warrants.

To prevail on this claim, Graf must show that (1) the performance of his trial counsel was deficient under the totality of the circumstances and (2) he was prejudiced thereby; that is, there is a reasonable probability that there would have been a different outcome in his case if his attorney had pursued such a motion. See *Sola-Morales*, 300 Kan. at 882.

Graf alleged that the search warrants were "fatally overbroad . . . for the search and seizure of all electronic devices" and all of the "data on every electronic device." He argues that the search warrants failed to state with particularity the items to be searched and illegally authorized "the seizure of 'any and all files'" for an unspecified crime.

No search warrant is contained in the record on appeal. According to the arrest affidavit, the district court approved a search warrant for Graf's home and car. The warrant authorized the search and seizure of computers, computer monitors and any means of storing electronic data, and video surveillance cameras. The police also executed a second search warrant and seized several more computers and an encrypted hard drive containing evidence of Graf's crimes.

In searching a computer, law enforcement "'cannot simply conduct a sweeping, comprehensive search of a computer's hard drive.'" *State v. Rupnick*, 280 Kan. 720, 732, 125 P.3d 541 (2005) (quoting *United States v. Walser*, 275 F.3d 981, 986 [10th Cir. 2001], *cert. denied* 535 U.S. 1069 [2002]). The search warrant must describe the things to be seized with sufficient particularity so that officers conducting the search are clear as to

12

what they are seeking and can avoid searching files of a type not identified in the warrant. *Walser*, 275 F.3d at 986.

In *Crowther v. State*, 45 Kan. App. 2d 559, 249 P.3d 1214, *rev. denied* 293 Kan. 1105 (2011), the district court issued a warrant to search the defendant's desktop and laptop computers, zip disks, and USB drives. On appeal, we held that faced with such a sweeping search warrant, trial counsel's performance was deficient for failing to move to suppress the evidence obtained from the search because the warrant did not list with particularity the types of files to be seized and the warrant "allowed 'a general exploratory rummaging' . . .which the warrant requirement was designed to prevent. [Citation omitted.]" 45 Kan. App. 2d at 567.

Graf presents facts which, at this stage, we accept as true and which show that his trial counsel's performance was deficient in failing to file a motion to suppress. For the necessary element of prejudice, see *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015), Graf asserts that the evidence obtained in the searches supported 8 of the 10 breach of privacy counts against him and that if this evidence had been suppressed, he would have had greater leverage to negotiate a more favorable plea agreement.

The motion, files, and records of the case do not conclusively show at this point that the Graf is not entitled to relief, so Graf is entitled to an evidentiary hearing on this claim.

Reversed and remanded for further proceedings consistent with this opinion.