**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 10, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

LOWELL ANDREW BILLY,

     Defendant - Appellant.

No. 16-7071
(D.C. No. 6:15-CR-00042-JHP-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously

that oral argument would not materially assist in the determination of this appeal. See

Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without

oral argument.

     Defendant Lowell Billy challenges a special condition of supervised release—one

that prohibits him from accessing the internet without approval of his probation

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

officer—that was imposed by the district court following its revocation of Billy's prior term of supervised release. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and applying plain error review, we affirm.

I

*Factual background*

In April 1997, Billy was convicted in the District Court of Tulsa County, Oklahoma, of first degree rape, kidnapping, and forcible sodomy.[1] In December 2000, Billy signed a "State of Oklahoma Notice of Duty to Register form, acknowledging [that] he understood the duties and procedures to register as a sex offender." ROA, Vol. 3 at 4. On May 5, 2008, Billy registered as a sex offender and again signed a State of Oklahoma Notice of Duty to Register form.

In January 2009, Billy moved to Waldron, Arkansas. Shortly thereafter, he registered as a sex offender in the State of Arkansas and listed his address as 8470 Hon Loop, Waldron, Arkansas. Exactly three months later, on April 20, 2009, Billy was

---

[1] The following description of those offenses is contained in the presentence investigation report that was prepared in this case:

> The defendant offered a ride to the victim, age 36. She accepted and the defendant drove the victim to his residence. Once inside, the defendant allegedly pulled out a gun and ordered the victim on the ground. He then proceeded to bind her hands and fondled her body. Shortly thereafter he untied her and forced her to perform oral sodomy. He then raped the victim. Soon after the rape occurred the victim attempted to flee the residence only to be beaten into unconsciousness by having her head rammed into a tree at the hands of the defendant. He left the victim there and one day later left the state and moved to Minnesota. He remained in Minnesota until his arrest on the instant offense some eighteen months later.

ROA, Vol. 3 at 7.

arrested at a residence located at 74 West 8th Street in Waldron, Arkansas. In a post-arrest interview, Billy admitted that he had moved to the 74 West 8th Street address but had failed to update his sex offender registration after doing so.

On July 31, 2009, Billy pleaded guilty in the United States District Court for the Western District of Arkansas to one count of failing to register as a sex offender, in violation of 18 U.S.C. § 2250. On or about November 17, 2009, Billy was sentenced to a twenty-four month term of imprisonment, to be followed by a lifetime term of supervised release.

After completing his term of imprisonment, Billy began living in Barling, Arkansas, and serving his term of supervised release. In January 2014, Billy tested positive for methamphetamine. On April 10, 2014, the United States District Court for the Western District of Arkansas revoked Billy's supervised release and sentenced him to a term of imprisonment of twelve months and one day, to be followed again by a lifetime term of supervised release. The term of supervised release included the same standard and special conditions of supervised release that were previously imposed, plus a new additional condition: that Billy "comply with any referral deemed appropriate by [his probation officer] for in-patient or out-patient evaluation, treatment, counseling or testing for substance abuse." ROA, Vol. 1 at 25.

Billy appealed his revocation sentence to the Eighth Circuit Court of Appeals, arguing that it was substantively unreasonable. The Eighth Circuit, however, rejected Billy's argument and affirmed his revocation sentence. United States v. Billy, 578 F.

App'x 625 (8th Cir. 2014).

Billy completed his term of imprisonment on December 4, 2014, and began his term of supervised release.

On January 26, 2015, Billy "met with his supervising probation officer in the Eastern District of Oklahoma and signed a Waiver of Hearing to Modify Conditions of Probation/Supervised Release" in which he agreed to the imposition of several new special conditions of supervised release.[2]  Supp. ROA at 3.  These included, in pertinent part:

> • that he "shall submit to a sex offender mental health assessment and a program of sex offender mental health treatment, as directed by the U.S. Probation Officer, until such time as [he] [wa]s released from the program by the probation officer," and that "[t]his assessment and treatment may include a polygraph to assist in planning and case monitoring."
>
> • that he "shall not view, purchase, possess, or distribute any form of pornography depicting sexually explicit conduct as defined in 18 U.S.C. § 2256(2), unless approved for treatment purposes."
>
> • that he "shall not use a computer to access any on-line computer service at any location (including employment) for the purpose of viewing, obtaining, or transmitting child pornography, or other sexually explicit material."
>
> • that he "shall consent to the U.S. Probation Officer conducting periodic unannounced examinations, without individual showing of reasonable suspicion, on any computer equipment used by the defendant."
>
> • that he "shall not possess or use a computer with access to any on-line computer service at any location (including place of employment) without the prior written approval of the probation officer."

_____

[2] It is unclear from the record precisely why Billy was being supervised at that point in time by a probation officer in the Eastern District of Oklahoma, rather than in the Western District of Arkansas.

-4-

Id. at 1-3.

On January 28, 2015, Billy's probation officer petitioned the United States District Court for the Western District of Arkansas to modify the conditions of Billy's supervised release in light of Billy's January 26, 2015 agreement to those conditions. On January 29, 2015, the United States District Court for the Western District of Arkansas granted the petition.

Billy subsequently obtained employment and found a residence in Cameron, Oklahoma. ROA, Vol. 2 at 15. Consequently, on June 11, 2015, the United States District Court for the Western District of Arkansas transferred jurisdiction over Billy's supervised release to the United States District Court for the Eastern District of Oklahoma. On June 30, 2015, the Eastern District of Oklahoma accepted jurisdiction.

On July 20, 2016, a petition for revocation was filed by Billy's probation officer alleging that Billy had violated one standard condition of supervised release (failing to submit a monthly report within the first five days of each month) and three special conditions of supervised release (failing to report for sex offender group treatment on five occasions; failing to report for a scheduled polygraph examination on two occasions; failing to report for drug testing on three occasions; and admitting to having used his phone to access the internet on several occasions).

The probation officer amended the petition for revocation on August 4, 2016. The amended petition alleged two additional violations. First, the amended petition stated that "[o]n August 3, 2016, a forensic scan of [Billy's] phone was conducted by the U.S.

Probation Office" that "yielded approximately 500 images containing adult pornography," of which "[a]pproximately 1-200 of the images contained sadistic or masochistic abuse." ROA, Vol. 1 at 41. This conduct, the amended petition alleged, violated the special condition of supervised release that prohibited Billy from viewing, purchasing, possessing, or distributing any form of pornography. Second, the amended petition stated that the forensic scan indicated that Billy had "deleted all text messages, call logs and internet browsing history [from his cell phone] prior to August 1, 2016," and had thus violated the special condition of supervised release prohibiting him from attempting to circumvent monitoring or examination by his probation officer. Id. at 42. In addition to the two new alleged violations, the amended petition also added an additional fact in support of the allegation that Billy had violated the special condition of supervised release prohibiting him from using a computer with access to any on-line computer service at any location: the forensic scan "confirmed that [Billy] had accessed the Bing web browser [on his phone] on numerous occasions to view adult pornography." Id. at 42.

The district court held a revocation hearing on August 23, 2016. Billy stipulated to the alleged violations in the amended revocation petition and in turn asked the district court to sentence him within the advisory guideline imprisonment range of eight to fourteen months. The government, however, asked the district court to sentence Billy to a term of imprisonment of twenty-three months. In support of its request, the government noted Billy's extensive and varied criminal history, including, in particular, prior

convictions for "kidnapping, forcible sodomy, [and] rape in the first degree." ROA, Vol. 2 at 13. The government in turn noted that Billy had violated the terms of his supervised release, in pertinent part, by "look[ing] at some pornography that, at best, c[ould] be considered disturbing given the fact that his previous rape and forcible sodomy conviction involved that kind of behavior." Id. at 14.

The district court agreed with the government and sentenced Billy to a term of imprisonment of twenty-three months, to be followed by a lifetime term of supervised release. Among the conditions of supervised release imposed by the district court was the following special condition:

> The defendant shall not possess or use a computer with access to any on-line computer service at any location (including place of employment) without the prior written approval of the probation officer. This includes any Internet Service provider, bulletin board system or any other public or private network or e-mail system.

ROA, Vol. 1 at 52.

Judgment in the case was entered on August 23, 2016. Billy filed a timely notice of appeal.

II

Billy argues on appeal that the district court erred "by imposing [the] special condition of supervised release that prohibit[s] [him] from accessing a computer or any device . . . connected to the internet." Aplt. Br. at 5. As discussed below, we reject Billy's argument.

*Standard of review*

Billy concedes that "[p]reservation of the issue[] presented on appeal did not occur in district court," and that, consequently, we review only for plain error. Aplt. Br. at 5; see United States v. Bustamante-Conchas, 850 F.3d 1130, 1137 (10th Cir. 2017 (en banc)). "To satisfy the plain error standard, an appellant must show (1) an error; (2) the error is plain or obvious; (3) the error affects the appellant's substantial rights (i.e., the error was prejudicial and affected the outcome of the proceedings); and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Carillo, 860 F.3d 1293, 1300 (10th Cir. 2017).

*Analysis*

Billy argues that the district court plainly erred by imposing the special condition of supervised release prohibiting him from accessing the internet. In support, Billy argues that the district court failed to explain how this special condition "is reasonably related to factors set forth in [18 U.S.C.] § 3553, []or how it is not a greater deprivation of liberty than necessary." Aplt. Br. at 14. He also argues that "there is no indication that any of [his] previous crimes ever involved a computer or use of the internet." Id. at 15.

Under 18 U.S.C. § 3583(d), a district court has broad discretion to impose conditions of supervised release, so long as any such condition

> (1) is reasonably related to the factors set forth in section 3553(a)(1) [the nature and circumstances of the offense and the history and characteristics of the defendant], (a)(2)(B) [the need for the sentence to afford adequate deterrence to criminal conduct], (a)(2)(C) [the need for the sentence to protect the public from further crimes of the defendant], and (a)(2)(D) [the

need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner];
(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a).

18 U.S.C. § 3583(d).

As Billy concedes, we affirmed a nearly identical condition of supervised release in United States v. Walser, 275 F.3d 981 (10th Cir. 2001), applying plain error review. Defendant Walser, who pleaded guilty to one count of possession of child pornography on his computer, argued on appeal that the district court committed plain error "when it imposed a special condition of supervised release barring his use of or access to the internet without the prior permission of the United States Probation officer." Id. at 987. We rejected Walser's argument, noting, in pertinent part:

> Mr. Walser is not completely banned from using the Internet. Rather, he must obtain prior permission from the probation office. Thus, the condition more readily accomplishes the goal of restricting use of the Internet and more delicately balances the protection of the public with the goals of sentencing. It may nevertheless be questionable whether the condition imposes "no greater deprivation of liberty than is reasonably necessary" to meet the goals referred to in 18 U.S.C. § 3583(d), since the vagueness of the special condition leaves open the possibility that the probation office might unreasonably prevent Mr. Walser from accessing one of the central means of information-gathering and communication in our culture today. We are not persuaded this concern rises to the level necessary to clear the extremely high hurdle set by the plain error standard, however, and we decline to overturn the condition imposed by the district court.

Id. at 988.

Billy argues, however, that Walser is distinguishable for three reasons. First, he argues that "Walser was convicted of possession of child pornography and a computer restriction clearly relates to [the] crime of conviction." Aplt. Br. at 16. In contrast, Billy notes, his offense of conviction did not involve possession of any type of pornography. Second, Billy notes that "Walser only faced a term of three years of supervised release compared to . . . Billy[,] who is subject to the condition for the rest of his life." Id. at 16-17. Lastly, Billy asserts that "the way we use and our reliance on the internet has increased dramatically in the last 15 years [since Walser was decided] and in the near future is likely to be how nearly a[ll] banking, billing, and shopping will be conducted." Id. at 17.

Addressing these arguments in reverse order, it is difficult to dispute Billy's assertion that the internet has assumed a greater role in all aspects of daily life since the time Walser was decided. For that reason, we agree that this special condition, as imposed on Billy in 2017, is more restrictive than it was when imposed nearly twenty years ago in Walser.

As for Billy's second argument, it is indisputable that there is a significant difference between the three-year term of supervised release that was imposed in Walser's case, versus the lifetime term of supervised release that was imposed on Billy. And that difference in length, when combined with the significance of the restriction as discussed above, arguably calls into question the legitimacy of the condition itself, at least in terms of whether the condition involves no greater deprivation of liberty than is

reasonably necessary for the purposes set forth in 18 U.S.C. §§ 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D).  The only factor that weighs against such a conclusion is the existence of the provision affording Billy's parole officer with discretion to allow Billy to access the internet.

As for Billy's first argument, he is correct that his case is factually distinguishable from <u>Walser</u> in that, unlike the defendant in <u>Walser</u>, neither his offense of conviction, nor any of his past offenses, involved possession of digital child pornography.  Thus, the special condition cannot be said to be "directly related to the nature and circumstances of Billy's conviction" for purposes of 18 U.S.C. § 3553(a)(1).  That said, however, the district court expressed concern at the time of sentencing about the potential connection between Billy's possession of violent pornography and his history as a violent sexual offender.[3]  Notably, Billy's counsel conceded below that this pornography was

---

[3] In addition to his prior convictions for rape, kidnapping and forcible sodomy, Billy is considered a "central figure" in the 1992 disappearance of a fourteen-year-old girl in Joplin, Missouri.  The PSR recounts the details of that still-open case:

> On August 12, 1992, a fourteen year old girl, Tracey Pickett, disappeared. The defendant and Tracy [sic] were present at an all night party in Joplin, Missouri.  The following morning, the defendant, Lowell Billy, offered to give Pickett a ride home in order to pick up a bathing suit, and then return to a friend's apartment.  A few hours passed without their return and Pickett's mother was notified.  She in turn notified the police.  An investigation was conducted which revealed that the defendant was the last person to be with Pickett.  She has neither been seen or heard from since that day.  Police suspect she is deceased.  As of September 4, 2009, the case is still open and Pickett has not been found.  According to detectives from Joplin, the defendant is still a central figure, but not a suspect, in the August 12, 1992, disappearance of Tracey Pickett.

ROA, Vol. 3 at 12.

"disturbing," ROA, Vol. 2 at 15, and Billy does not dispute the legitimacy of the district court's concern in his appeal. Moreover, as the government argued at the time of sentencing, the evidence in the record, including Billy's criminal and personal history and his recent possession of violent pornography, suggests that Billy "is an extremely, extremely dangerous individual." Id. at 14. For these reasons, we have no trouble concluding that the special condition is reasonably related to Billy's "history and characteristics," 18 U.S.C. § 3553(a)(1), as well as "the need for the sentence to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B)," and "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C).

In the end, it is a close case whether the differences between Billy's case and Walser are significant enough to establish that the district court erred in imposing the challenged special condition. But, even assuming the differences are sufficient to establish that the district court erred, we conclude they are insufficient to establish that the error was plain. Indeed, the holding in Walser, which has never been called into question in our subsequent cases, tends to establish that the error was not plain. See United States v. Barela, 797 F.3d 1186, 1194 (10th Cir. 2015) (concluding that continued circuit split regarding the claimed error meant that the error was not plain). Moreover, aside from his arguments attempting to distinguish Walser, Billy cannot point to a single case that supports his claim that the district court's presumed error was plain. In other words, he has failed to establish that the district court's presumed error was "clear or obvious under current, well-settled law." United States v. DeChristopher, 695 F.3d 1082,

1091 (10th Cir. 2012).

In addition, Billy cannot establish the fourth prong of the plain error test, i.e., that the alleged error seriously affects the fairness, integrity, or public reputation of judicial proceedings.[4] That is because there is a rational connection between the challenged special condition and Billy's personal history, and the challenged special condition in turn was reasonably aimed at protecting the public from someone who clearly appears to be a dangerous individual. Moreover, the challenged special condition includes a "safety valve" in that it affords Billy's probation officer with discretion to allow Billy to access the internet under specified conditions. Lastly, Billy previously agreed to this precise condition when he was on supervised release in the Western District of Arkansas.

Thus, at a minimum, Billy has failed to establish the second and fourth prongs of the plain error test, and therefore is not entitled to relief on this claim.

### III

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[4] As for the third prong of the plain error test, there appears to be no question that the alleged error affected Billy's substantial rights, since it will seriously impact his conduct for the remainder of his lifetime.